**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Andrea Place,**

          **Plaintiff,**                 **Case No. 2:21-cv-985**

           **v.**                    **Judge Michael H. Watson**

**Warren Local School District**        **Magistrate Judge Jolson**
**Board of Education, *et al*.,**

          **Defendants.**

**OPINION AND ORDER**

The Warren Local School District Board of Education ("Warren BOE") and Amy Way Colgrove ("Coach Way") (collectively, "Defendants") move for summary judgment. ECF No. 40. Defendants also move to strike Andrea Place's ("Plaintiff") response to Defendants' motion for summary judgment. ECF No. 65. For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Defendants' motion to strike.

## I.    FACTS

Plaintiff attended Warren High School ("WHS") and graduated in 2021. A. Place Dep. 12:3–6, ECF No. 39-1. During her freshman and sophomore years at WHS, Plaintiff played on the girls' basketball teams; she made the varsity team her sophomore year. *Id.* at 24:21–25:2. Coach Way was the head coach, and Heather Saliba ("Coach Saliba") was an assistant coach of the girls' basketball teams at WHS. *Id.* at 84:3–7; 86:19–87:3; Saliba Aff. ¶ 4, ECF No. 40-4.

Plaintiff's father, Eddie Place ("Eddie"), and mother, Bree Place ("Bree"), were concerned that Coach Way was not giving Plaintiff enough playing time and was not treating Plaintiff fairly during her sophomore year. Those concerns resulted in multiple complaints.

Eddie first complained to Coach Way via private text messages about the amount of playing time Plaintiff was receiving. Way Dep. 57:8–58:9, ECF No. 39-3. His text messages also accused Coach Way of bullying Plaintiff. *Id.* at 58:16–20. Eddie also apparently sent text messages to Coach Way threatening to sue her. Audio Recording of Meeting, 8:04–8:09, Manual Ex. ECF No. 38.

Then, on January 31, 2019, Eddie and Bree met with Warren High School Principal Ryan Lemley ("Principal Lemley"), Warren High School Assistant Principal Jeremy Grimm ("Assistant Principal Grimm"), Warren High School Athletic Director Steve Harold ("AD Harold"), and former Warren BOE member (and Plaintiff's family friend) Allan Mallahan ("Mallahan") to discuss Eddie and Bree's concerns about Coach Way. Harold Dep. 126:2–10, ECF No. 39-5. Near the beginning of this hour-long conversation, Eddie stated that he felt Coach Way was treating Plaintiff unfairly and that both Coach Way and AD Harold were bullying her. Audio Recording of Meeting, 2:15–2:22, Manual Ex. ECF No. 38. Bree also voiced concerns about Coach Way's communication and interaction with both players and parents. *Id.* at 9:00–10:04. The remainder of the conversation centered around Eddie and Bree's concerns about Plaintiff's playing time. *Id.* at 11:00–64:00. The conversation ended with an agreed-upon path

forward—AD Harold told Eddie and Bree that he would speak with Coach Way about their concerns, and Eddie told AD Harold and Principal Lemley that he would cease sending text messages to Coach Way.  *Id*. at 56:34–59:04.

A few days after this meeting, on February 4, 2019, Plaintiff started in a varsity game; however, she tore her ACL about halfway through the game.  A. Place Dep. 50:15–24, 51:1–4, ECF No. 39-1.  This injury caused Plaintiff to miss the remainder of her sophomore basketball season.  Way Dep. 31:18–25, 32:1–11, ECF No. 39-3.

The second complaint occurred on June 17, 2019, after the end-of-season banquet.  E. Place Dep. 217:13–19, ECF No. 53;  A. Place Dep. 181:17–21, ECF No. 39-1.  At the banquet, Eddie and Bree saw a "Wall of Shame" display that included a photo of Plaintiff and other members of the team.  E. Place Dep. 205:7–24, 206:1–23, ECF No. 53.  After the banquet, Eddie sent an email to a Warren BOE member stating the display was "just one example of the kind of conduct and bullying that has been displayed throughout the entire season."  *Id*. at 217:13–24, 218:1–9.  He also stated that the "girls basketball team has become less united and more divided . . ." and that he "would appreciate [] support in making some necessary changes with our coaching staff to ensure that these issues no longer happen . . . ."  *Id*. at 230:14–18, 243:11–15.  Eddie later discovered that a parent created the display, not Coach Way.  *Id*. at 211:4–24.

Plaintiff could not be part of the basketball team during her junior year because of her ACL injury—which required surgery and intense physical therapy for almost a year. A. Place Dep. 22:15–23, ECF No. 39-1; Way Dep. 76:19–25, 77:1–3, ECF No. 39-3. Plaintiff tried out for, but did not make, the varsity basketball team during her senior year. Way Dep. 132:13–16, ECF No. 39-3. Coach Way told Plaintiff she did not make the team because she would not be happy with her role on the team. *Id*. at 143:20–25, 144:1–15; A. Place Dep. 252:9–24, 253:1–2, ECF No. 39-1. Plaintiff believes she was "cut" from the team out of retaliation for her parents' prior complaints.

On November 3, 2020, after Plaintiff was informed she did not make the varsity basketball team her senior year, her parents complained again. E. Place Dep. 291:4–24, 292:1–10, ECF No. 53. Upon learning Plaintiff did not make the team, Eddie immediately called Principal Lemley and Warren Superintendent Kyle Newton ("Superintendent Newton") and sent a text message to Warren BOE member Bob Allen ("Allen"). *Id*. at 288:10–18. Superintendent Newton sent an email to the Warren BOE summarizing that phone call and indicating that he planned to set up a meeting with Eddie. Newton Dep. 116:7–25, 117:1–12, ECF No. 39-4; Newton Dep. Ex. 10, ECF No. 49. Allen responded to that email, stating that he wanted "to be sure the daughter is not suffering the consequences of a parent's actions or potential actions." *Id*. at 166:13–17. Allen also stated, "[o]ur team must be loaded this year if we have 5 guards that are better than AP . . . I voted against [Coach Way] being hired . . . for what I thought was unfair and

biased treatment of players . . . I cannot support her in the future." Newton Dep. Ex. 10, 933, ECF No. 49. Allen later stated at a Warren BOE meeting that he "suspect[ed Plaintiff] was cut from the team because of a conflict Coach Way had with the player's parent." Allen Dep. 41:4–7, ECF No. 46.

The morning after Eddie called Superintendent Newton and Principal Lemley, Superintendent Newton, Principal Lemley, and AD Harold met to discuss Eddie's complaint. Lemley Dep. 149:24, 150:1-24, ECF No. 39-2. AD Harold shared with Superintendent Newton and Principal Lemley that Coach Way told him that Plaintiff did not make the varsity basketball team because of her ability on the court compared to the rest of her team, her grade level, her attitude and coachability, and Coach Way's belief that she would not accept her role on the team. Newton Dep. 160:23–25, 161:1–4, ECF No. 39-4; Harold Dep. 96:18–25, 97:1–10, 291:13-19, 296:20–25, 297:1–21, ECF No. 39-5. After this meeting, Principal Lemley sent Eddie a text message stating that Superintendent Newton "is taking it from here, feel free to reach out to him again today." Lemley Dep. 161:3–10, ECF No. 39-2. Eddie did not reach out to Superintendent Newton, nor did Superintendent Newton or Principal Lemley reach back out to Eddie. Newton Dep. 200:7–21, ECF No. 39-4.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986). The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).  Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted); *see also Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court may rely on the parties to call attention to the specific portions of the record that demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## III. ANALYSIS

Plaintiff brings the following claims:[1] (1) First Amendment retaliation against the Warren BOE and Coach Way; (2) violation of her Substantive Due Process rights under the Fourteenth Amendment against the Warren BOE and Coach Way; (3) Supervisory Liability under 42 U.S.C. § 1983 against the Warren BOE; (4) *Monell* liability against the Warren BOE; and (5) various Ohio state-law claims.[2] Defendants move for summary judgment on each claim.

### 1. Motion to Strike

As a preliminary matter, the Court addresses Defendants' motion to strike Plaintiff's response to Defendants' motion for summary judgment. ECF No. 65.

---

[1] Plaintiff sues Coach Way both in her individual capacity and in her official capacity as Head Coach of Girls Basketball at Warren High School. Because Plaintiff's claims against Coach Way in her official capacity completely overlap with the claims against the Warren BOE, the Court addresses only the claims against Coach Way in her individual capacity. *Cf. Muslim Cmty. Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Twp.*, 947 F. Supp. 2d 752, 773 (E.D. Mich. 2013) ("Plaintiff's claim against Individual Defendants to the extent they are sued in their official capacities are redundant as Plaintiff also is suing the Township.").

[2] In her Complaint, Plaintiff also brings an Equal Protection claim against the Warren BOE and Coach Way. Compl. ¶¶ 60–63, ECF No. 1. However, in her response to Defendants' motion for summary judgment, Plaintiff concedes that discovery did not reveal evidence that would support those claims and, as such, agrees that summary judgment should be granted to Defendants. Accordingly, the Court **GRANTS** summary judgment to Defendants on the Equal Protection claims.

Defendants argue that the response should be stricken because it relies on inadmissible evidence and misstates the evidence in the record.

The Court disagrees.  Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The key word in Rule 12(f) is "pleadings."  *See Fox v. Mich. State Police Dept.*, 173 F. App'x 372, 375 (6th Cir. 2006) (Under Rule 12(f), "a court may strike only material that is contained in the pleadings.").  Federal Rule of Civil Procedure 7(a) defines pleadings as a complaint and an answer; a reply to a counterclaim; an answer to a cross-claim; a third-party complaint; and a third-party answer.  *Brown v. Genworth Lift & Annuity Ins. Co.*, 2020 WL 4340539, at *1 (E.D. Tenn. July 28, 2020) (quoting Fed. R. Civ. P. 7(a)).  A response to a motion is not a pleading, and Rule 12(f) is inapplicable here.  *Cf. Wimberly v. Clark Controller*, 364 F.2d 225, 227 (6th Cir. 1966) (holding that an affidavit is not a pleading within the meaning of the rule); *JPMorgan Chase Bank, NA v. Crouch*, Case No. 2:11-cv-721, 2012 WL 13026817, at *1 (S.D. Ohio Aug. 21, 2012) (Watson, J.) (holding that an attachment to a response is not a pleading within the meaning of the rule).

Accordingly, Defendants' motion to strike is not well-taken and is **DENIED**. Nonetheless, the "Court has discretion to disregard those facts which would not be admissible in evidence, and to rely on those facts which are competent evidence."  *Wimberly*, 364 F.2d at 227 (denying motion to strike an affidavit

attached to a motion for summary judgment which, the movant argued, was inadmissible evidence).

## 2. Motion for Summary Judgment

Defendants move for summary judgment on each of Plaintiff's claims. The Court addresses each, in turn.

### a. First Amendment Retaliation

Plaintiff brings a First Amendment retaliation claim against Coach Way, individually, and against the Warren BOE. To successfully prove a First Amendment retaliation claim, Plaintiff must show that she "(1) engaged in protected conduct [*i.e.*, constitutionally protected speech]; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by [her] protected conduct." *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 759 (6th Cir. 2022) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

#### i. Against Coach Way

As discussed above, because the claims against Coach Way in her official capacity completely overlap with the claims against the Warren BOE, the Court addresses only the individual-capacity retaliation claim against Coach Way.

##### A. Did Plaintiff suffer an adverse action?

Beginning with the second prong. At the very least, being "cut" from the basketball team is an adverse action. *See, e.g.*, *Henley v. Tullahoma City Sch.*

*Sys.*, 84 F. App'x 534, 540 (6th Cir. 2003) (concluding that denial of the opportunity to play high school basketball "would have the tendency to chill [constitutionally protected] speech."); *Cf. B.L. by and through Levy v. Mahanoy Area Sch. Dist.,* 376 F. Supp. 3d 429, 440 (M.D. Pa. 2019), *aff'd Mahanoy Area Sch. Dist. v. B.L. by and through Levy*, 141 S.Ct. 2038 (2021) ("If telling a student 'Don't distribute invitations' can be unconstitutional, surely kicking a student off the team can be too."). Accordingly, Plaintiff has established the second prong of her prima facie case.

### B. Was the speech protected?

The Court next considers the first prong—whether there is any constitutionally protected speech in this case. As an initial matter, Defendants incorrectly frame the relevant speech in this case. Plaintiff alleges that she was cut from the basketball team because of her *parents'* complaints, not her complaints to her parents. The Sixth Circuit has considered First Amendment claims under a theory that a defendant retaliated against the plaintiff for someone else's constitutionally protected speech. *See Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 516 (6th Cir. 2017); *Henley*, 84 F. App'x at 541. Accordingly, the Court considers Plaintiff's parents' complaints as the relevant "speech" in its analysis and assumes Plaintiff's retaliation theory is viable as a matter of law. The question, then, is whether Plaintiff's parents' complaints about Coach Way were constitutionally protected.

"The Court has long recognized that educational institutions occupy a unique place in the First Amendment jurisprudence." *Hardy v. Jefferson Comm. Coll.*, 260 F.3d 671, 680 (6th Cir. 2001). In the seminal school speech case, *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503 (1969), the Supreme Court recognized that students "do not shed their constitutional rights to freedom of speech or expression even at the schoolhouse gate." *Mahanoy Area Sch. Dist. v. B.L. by and through Levy*, 141 S. Ct. 2038, 2044 (2021) (quoting *Tinker*, 393 U.S. at 507). "Likewise, parents have the right to express their opinions and advocate for the rights of their children" in the school setting. *Stokey v. N. Canton Sch. Dist.*, No. 5:18-CV-1011, 2018 WL 2234953, at *5 (N.D. Ohio May 15, 2018).

However, these rights are not absolute. "[F]ree-speech rights apply in light of the special characteristics of the school environment." *Kutchinski v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350, 356 (6th Cir. 2023) (quoting *Tinker*, 393 U.S. at 506). Applying *Tinker* in the specific context of school sports, the Sixth Circuit has held that if a school reasonably forecasts that certain speech is likely to cause a "substantial disruption of or material interference with school activities[,]" the school may regulate or prohibit that speech. *Lowery v. Euverard*, 497 F.3d 584, 592 (6th Cir. 2007) (quoting *Tinker*, 393 U.S. at 513).

Here, the parties agree that, because the relevant speech occurred in the context of a high school sports program, *Lowery*'s application of the *Tinker* principles governs this analysis. *See id.* ("The parties agree that the instant case

is governed by *Tinker* [because the] speech in question . . . occurred in the context of a high school football program.").[3]

In *Lowery*, the Sixth Circuit considered whether student speech criticizing a sports coach and questioning the coach's authority was constitutionally protected under *Tinker*. 497 F.3d at 585. Several members of the high school football team did not like their football coach because he, *inter alia*, humiliated and degraded them. *Id*. The players circulated a petition stating that they "hated" the coach and did not want to play for him. *Id*. The coach later asked each player whether he signed the petition and whether he wished to continue playing for the coach. *Id*. at 586. Any player who signed the petition, but later apologized, was permitted to remain on the team; the rest were dismissed. *Id*. The dismissed players sued the coach and school administrators, arguing that the coach retaliated against them for exercising their First Amendment rights. *Id*.

In its analysis, the Sixth Circuit recognized the importance of team unity and the leadership and authority of a coach in high school athletics. *Id.* at 594. Indeed, the court emphasized that "plays and strategies are seldom up for debate. Execution of the coach's will is paramount." *Id*. at 591 (quoting *Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1190 (6th Cir. 1995)). The court concluded

---

[3] It is not entirely obvious that *Tinker* would apply where the challenged speech came from a parent rather than a student. For example, the Sixth Circuit did not even address whether *Tinker* should apply in a school-adjacent speech case involving a parent. *See Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580 (6th Cir. 2008). However, because her claim fails under her own framework, the Court does not address this issue further.

that, under *Tinker*, it was reasonable for the coach and school administrators to have forecasted that the petition would cause a substantial disruption to these important interests. *Id*. at 594. Therefore, the players' speech was not protected, and their dismissal from the team did not violate their First Amendment rights. *Id*. at 600–01. In reaching this conclusion, the court recognized that the case was, at bottom, less about the players' free speech rights and more about the players' alleged right to belong to a high school sports team on their terms. *Id*. at 589.

Recently, in considering whether to issue a temporary restraining order, a court in the Northern District of Ohio applied *Lowery* to a parent's speech in the high school sports context. *See Stokey*, 2018 WL 2234953, at *1. In *Stokey*, a student-athlete's father ("Stokey") instructed him not to practice pole vaulting in the rain, even if the coach told him to do so. *Id*. Accordingly, the student-athlete refused to practice pole vaulting during one practice, and he was suspended from an upcoming track meet. *Id*. Stokey then sent an e-mail to the coach asking why his son had been suspended from the meet; the coach responded that, because the student-athlete did not participate in practice, he could not participate in the meet. *Id*.

Stokey then attempted to persuade the school board to change its policy to, *inter alia*, allow student-athletes to refrain from participating in activities they deemed unsafe without punishment. *Id*. at *2. The administration declined to adopt this policy change. *Id*. After several meetings with Stokey and his son, the

coach eventually recommended that the student-athlete be removed from the team because the student-athlete did not trust that the coach would provide him with a safe environment. *Id*.

The school district then restricted the student-athlete from any further participation on the pole-vaulting team. *Id*. at *3. In a letter detailing this decision, the Superintendent of the district explained that the decision was based, in part, on the concerns Stokey had raised about the pole-vaulting program. *Id*. Stokey sued the school district asserting a single claim of First Amendment retaliation. *Id*. He argued that his son was barred from the pole-vaulting team because of *his* attempts to change the district's policies. *Id*.

Applying the *Tinker* and *Lowery* frameworks, the district court concluded that, although the case was in its infancy, the facts in the complaint demonstrated that the case was "more about [the student-athlete's] alleged right to participate on the high school pole vaulting team on his own—or his father's—terms." *Id*. at *6. The court stated that it was "reasonable to conclude that a player's refusal to follow [team] rules would lead to disunity on the team and resentment from the players who agreed to be subjected to the rules[.]" *Id*. Accordingly, the court concluded that Stokey was unlikely to succeed on the merits of his First Amendment retaliation claim. *Id*. at *9–10.

Then, another court in this district applied *Lowery* to a student's complaints that her coach bullied, humiliated, isolated, and denied her meaningful practice and playing time as a result of a small rules infraction and, eventually, dismissed

her from the team as a result of her complaints to the school's Title IX office about this treatment.  *Doe v. Alvey*, No. 1:20-cv-410, 2021 WL 1099593, at *1, *3 (S.D. Ohio Mar. 23, 2021).  That court concluded that the student's complaints about this treatment, even if true, "amounted to no more than criticisms of [the coach's] coaching decisions and methods, which [the coach] could reasonably have forecasted would disrupt the team."  *Id*. at *5.  Under those circumstances, the court held that dismissal from the team on the basis of the complaints did not violate the student's First Amendment rights.  *Id*.

Taken together, *Lowery*, and the district court cases interpreting *Lowery*, demonstrate that First Amendment protection does not extend to complaints made in the context of a sports program when the complaints are related to coaching decisions, coaching methods, coaching style, or playing time, when the speech could reasonably be forecasted to cause a substantial disruption or material interference with that program.  Further, these cases hold that speech that could undermine a coach's authority or sow disunity on the team causes a substantial disruption or material interference.[4]  Each case that has applied *Lowery* concluded that the school was reasonable in forecasting that such

---

[4] This is not to say that all complaints made in the context of a sports program do not receive First Amendment protection.  For example, complaints about sexual assault are protected.  *Kesterson v. Kent State Univ*., 967 F.3d 519, 525 (6th Cir. 2020).  Likewise, complaints about sex and race discrimination are also protected.  *Ifeanyi v. Alvey*, Case No. 1:18-cv-193, 2018 WL 8805034, at *8 (S.D. Ohio July 23, 2018).

complaints would create a substantial or material disruption to team unity or would undermine the coach's authority—albeit, without explaining exactly how.

The Court finds the same as to the facts in this case. It was reasonable to forecast that Plaintiff's parents' complaints would cause a substantial or material disruption to team unity or that they would undermine Coach Way's authority. As one example, it is certainly reasonable to forecast that Eddie's text messages threatening to sue Coach Way over Plaintiff's playing time and Coach Way's communication style and methods would undermine her authority. Furthermore, it is reasonable to forecast that Plaintiff's parents' complaints about her playing time would undermine team unity and Coach Way's authority by Plaintiff's parents attempts to insert themselves into the role of coach, rather than leaving those decisions to Coach Way. Thus, under *Lowery*, the speech here is not protected, and Plaintiff's retaliation claim fails.

Plaintiff argues that *Lowery* should not control here and, instead, relies on several other cases in support of her argument that her parents' complaints are protected. *See Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 588 (6th Cir. 2008), *Wenk v. O'Reilly*, 783 F.3d 585 (6th Cir. 2015), and *Brazell-Hill v. Parsons*, Case No. 2:17-cv-912, 2020 WL 4748545, at *11 (S.D. Ohio Aug. 17, 2020). These cases are all readily distinguishable.

First, in *Jenkins*, the relevant speech was about a student's medical care. 513 F.3d at 583–85. In *Wenk*, the relevant speech was a parent advocating for his disabled daughter's individual educational plan. 783 F.3d at 594. Finally, in

*Brazell-Hill v. Parsons*, the relevant speech involved a parent's complaints to school officials about a school bus driver's reckless driving after her child was injured on the school bus.  2020 WL 4748545, at *1, *12.  None of these cases involved school sports or "participation in a voluntary athletic program."  *Stokey*, 2018 WL 2234953, at *9 ("The context of the speech in this case distinguishes it from the situation presented in *Jenkins* . . . *Jenkins* involved participation in educational programs, Stokey's speech occurred in the context of his son's participation in a voluntary athletic program.").  Thus, those cases were governed by the standard *Tinker* principles, not the version of *Tinker* that the Sixth Circuit applies in the school sports context.  Notably, in *Wenk* and *Brazell-Hill*, the defendants did not even contest that the relevant speech was protected by the First Amendment.

This case is more similar to *Lowery*, *Stokey*, and *Alvey* than the cases Plaintiff cites.  Plaintiff's parents complained, chiefly, about Plaintiff's playing time.  Her parents also complained about Coach Way's communication style and treatment of Plaintiff, at one point referring to said treatment as "bullying."  The substance of these complaints are very similar to the substance of the complaints made in *Alvey* and *Lowery* and are analogous to the complaints made in *Stokey*.  At bottom, Plaintiff's parents' complaints, and the complaints in *Alvey, Lowery,* and *Stokey*, involved displeasure with a sports coach's coaching style or coaching decisions.

The Court does recognize two factual differences that are worth noting. First, in *Lowery*, *Alvey*, and *Stokey*, the student was also involved in the speech in some way.  While student involvement certainly heightens the disruption such speech may cause, that only Plaintiff's parents spoke here does not render the potential disruption immaterial or insubstantial.  Indeed, regardless of who is speaking, an "attack on the coach's authority necessarily undermines [her] ability to lead the team[,]" *Stokey*, 2018 WL 2234953, at *5 (quoting *Lowery*, 497 F.3d at 594), and is a material and substantial disruption to team unity.  Second, the complaints in *Lowery* and *Stokey* were made in a more public manner than the complaints in this case; however, the complaints in *Alvey* were made in a similarly private manner to Plaintiff's parents' complaints.

In sum, *Lowery* controls here.  Plaintiff's parents' speech "amounted to no more than criticisms of [the] coaching decisions and methods, which [the coach] could reasonably have forecasted would disrupt the team."  *Alvey*, 2021 WL 1519628, at *5.  At bottom, this is a case that is less about free speech rights and more about Plaintiff's alleged "right to participate on [her high school basketball team on her] own terms[.]"  *Lowery*, 497 F.3d at 600.  Accordingly, the speech was not protected by the First Amendment, and Plaintiff cannot establish her prima facie case of First Amendment retaliation against Coach Way.

### ii.    Against the Warren BOE

Although not entirely clear, it seems Plaintiff argues more than that the Warren BOE is responsible for Coach Way's alleged retaliation under a *Monell*

theory. [5]  She also appears to allege that the Warren BOE itself retaliated against Plaintiff when it failed to investigate the factual bases for her parents' complaints and failed to investigate the factual bases for Coach Way's decision to "cut" her from the team; she also alleges that the Warren BOE's failures to investigate were retaliation for her parents' complaints.  *See* Compl. ¶ 49, ECF No. 1.  Plaintiff seems to argue that these failures to investigate were adverse actions against her.  For the following reasons, Plaintiff's claim based on the Warren BOE's separate conduct also fails.

Even assuming her parents' speech was constitutionally protected (which it was not), and even assuming a failure to investigate amounts to an adverse action, the retaliation claim against the Warren BOE fails because Plaintiff cannot show she suffered any adverse action by the Warren BOE.  Instead, there is no genuine dispute of material fact that the Warren BOE did, in fact, investigate all her parents' complaints about Coach Way.

Start with her parents' first complaint.  When Eddie and Bree met with Principal Lemley, AD Harold, and Vice Principal Grimm about Coach Way on January 31, 2019, AD Harold told Eddie he would discuss these issues with Coach Way.  Audio Recording of Meeting, 56:34–59:04, Manual Ex. ECF No. 38.

---

[5] Plaintiff's *Monell* claim fails.  There can be no liability under *Monell* without an underlying constitutional violation.  *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021).  Accordingly, because neither Defendant violated any of Plaintiff's constitutional rights, the Warren BOE is entitled to summary judgment on this claim.  *Id.*; *see also Sensabaugh*, 937 F.3d at 630.

AD Harold testified that he met with Coach Way after this meeting and that he asked Coach Way about Eddie's allegations of mistreatment.  Harold Dep. 128:13–19, 226:11–17 ECF No. 39-5.  AD Harold further testified that he did not personally observe any mistreatment, nor did he receive any complaints about mistreatment from other players or parents.  *Id*. at 128:20–23, 314:25–315:19.  Plaintiff offers no evidence to dispute these facts.  Therefore, there is no genuine dispute of material fact indicating a failure to investigate her parents' first complaint.

Next is the second complaint regarding the Wall of Shame display.  After Eddie sent an e-mailed photo of the display to Warren BOE member West, West forwarded that email to Superintendent Newton.  Newton Dep. 102:7–10, ECF No. 39-4.  Superintendent Newton then forwarded the email to AD Harold and requested that he investigate the display.  *Id*. at 102:10–14.  AD Harold contacted Coach Way about the display, and Coach Way told AD Harold that a parent had created the display.  Harold Dep. 306:22–307:11, ECF No. 39-5.  AD Harold then contacted the parent, who admitted to creating the display.  *Id*.  Plaintiff offers no evidence to rebut this testimony.  Accordingly, there is no genuine dispute of material fact indicating a failure to investigate her parents' second complaint.

Finally, the Warren BOE also investigated the third complaint after Plaintiff was "cut" from the team.  After Eddie called Superintendent Newton to complain about Plaintiff being "cut," Superintendent Newton sent an e-mail summarizing

the call to the Warren BOE members.  Newton Dep. 116:13–117:11, ECF No.

39-4.  Shortly thereafter, Warren BOE member Bob Allen responded to

Superintendent Newton asking how many girls were cut from the team and

expressing that he wanted to be sure Plaintiff was not suffering the

consequences of her parent's actions.  Newton Dep. Ex. 10, ECF No. 49.  The

following day, Superintendent Newton met with Principal Lemley and AD Harold.

Newton Dep. 136:3–6, ECF No. 39-4.  Prior to that meeting, AD Harold met with

Coach Way; Coach Way shared with AD Harold the reasons why Plaintiff had

been "cut" from the team.  Harold Dep. 296:20–297:12, ECF No. 39-5.  AD

Harold conveyed those reasons to Superintendent Newton and Principal Lemley.

Newton Dep. 154:9–22, ECF No. 39-4.  After the meeting, Superintendent

Newton sent an e-mail to Warren BOE member Bob Allen summarizing the

conversation and the reasons why Plaintiff had been "cut" from the team.

Newton Dep. Ex. 10, ECF No. 49.  Plaintiff does not dispute these facts.

Accordingly, there is no genuine dispute of material fact indicating a failure to

investigate her parents' third complaint.

　　　For these reasons, Defendants are entitled to summary judgment on

Plaintiff's First Amendment retaliation claim against the Warren BOE.

### b.  Violation of Substantive Due Process Rights under the Fourteenth Amendment

　　　Plaintiff also brings a Fourteenth Amendment Substantive Due Process

claim.  "[W]here a particular Amendment provides an explicit textual source of

constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Heike v. Guevara*, 519 F. App'x 911, 913 (6th Cir. 2013) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).  Thus, to the extent Plaintiff attempts to bring a Due Process claim against the Warren BOE and Coach Way for retaliation stemming from Eddie's complaints, her First Amendment retaliation claim "resolves this issue."  *Heike*, 519 F. App'x at 913.

This leaves only Plaintiff's argument that Coach Way violated her substantive due process rights by harassing or bullying Plaintiff.  Paraphrased for simplicity, Plaintiff bases her claim of harassment or bullying by Coach Way on her testimony that: (1) Coach Way was difficult to communicate with and carried negative energy, A. Place Dep. 125:11–126:13, ECF No. 39-1; (2) Coach Way did not provide encouragement to her players and made statements that "smashed any hope" of playing college basketball, *Id*. at 128:20–129:10; (3) Coach Way talked down to the team and "cussed," *Id*. at 130:6–11; (4) Coach Way told the players she is not their friend or their mother and she did not want the players to come to her with their problems, *Id*. at 131:7–24; and (5) Coach Way cut Plaintiff from the team, *Id*. at 253:14–254:4.

The substantive element of the Due Process Clause of the Fourteenth Amendment guarantees the right to be free from arbitrary government actions and conduct that "shock the conscience."  *Hunt v. Sycamore Community Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008) (citing *Cty. of Sacramento v.*

*Lewis*, 523 U.S. 833, 845–46 (1998)). However, both the Supreme Court and the Sixth Circuit have instructed that the substantive element of the Due Process Clause should be interpreted narrowly and with a high bar of culpability to prevent the Clause from becoming "a 'font of tort law.'" *Jane Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 933 (6th Cir. 2020) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Thus, a state "actor's conduct violates the Due Process Clause only if it is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience[;] only extreme misconduct will violate the clause." *Id*.

Here, none of this conduct rises to the level of conscience-shocking. *Cf. Domingo v. Kowalski*, 810 F.3d 403, 406, 410 (6th Cir. 2016) (concluding that even if actions of gagging student with a bandana and forcing a student to toilet-train in view of other students are improper or tortious, as a matter of law they are not egregious actions under the Fourteenth Amendment). There is, thus, no genuine dispute of material fact that Coach Way did not engage in conduct that violated Plaintiff's substantive due process rights. Accordingly, Coach Way is entitled to summary judgment on this claim.

### c. Supervisory Liability Under 42 U.S.C. § 1983

Plaintiff brings a claim for supervisory liability pursuant to 42 U.S.C. § 1983 against the Warren BOE.

"[E]ach Government official . . . is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Therefore, "[i]n order

to succeed on a supervisory liability claim, Plaintiff must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  "A prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *Womack v. Conley*, 595 F. App'x 489, 495 (6th Cir. 2014).

Because, *inter alia*, no unconstitutional conduct occurred in this case, the Warren BOE is entitled to summary judgment on Plaintiff's supervisory liability claim.

### d.  State-Law Claims

Plaintiff's only remaining claims are her state-law claims for (1) violation of the Free Speech Clause of the Ohio Constitution; (2) bad faith, reckless, and intentional conduct; and (3) intentional infliction of emotional distress.  The Court lacks independent subject-matter jurisdiction over those claims and declines to exercise its supplemental jurisdiction over them.

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014) (internal quotation marks and citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed

as well" (modified by *Rosado v. Wyman*, 397 U.S. 397, 402–04 (1970)).  A district court shall "consider and weigh several factors" when determining whether to exercise supplemental jurisdiction, including the "values of judicial economy, convenience, fairness, and comity."  *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  District courts can also consider factors such as: whether the plaintiff engaged in manipulation by dismissing federal claims; whether discovery had been completed; the degree of familiarity the court has with the issues; and if the court had invested significant time in the decision.  *Gamel*, 625 F.3d at 952 (citation omitted).

On balance, the Court finds the weight of these factors is against the continued exercise of supplemental jurisdiction.  Although discovery has been completed, the other factors weigh against the continued exercise of supplemental jurisdiction over the state-law claim.  First, all federal claims have been dismissed, and only state-law claims remain.  There is "a strong presumption in favor of dismissing supplemental claims" once the federal claims have been dismissed.  *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1250 (6th Cir. 1996) (citing cases).  Second, while the Court may have presided over this case for just over two years, the Court has relatively little familiarity with it; indeed, this is the first substantive opinion the Court has issued in the case.

These factors taken together weigh against the continued exercise of supplemental jurisdiction.  Accordingly, the Court declines to exercise

supplemental jurisdiction over the stand-alone state-law claims. Accordingly, the claims for (1) violation of the Free Speech Clause of the Ohio Constitution; (2) bad faith, reckless, and intentional conduct in violation of Ohio Rev. Code § 2744.03; and (3) intentional infliction of emotional distress are **DISMISSED WITHOUT PREJUDICE**.[6]

## IV. CONCLUSION

"Any athlete who has been cut from a team can sympathize with [Plaintiff]. But disappointment and frustration with a coach's conduct do not, without more, entitle a player to legal relief." *Heike*, 519 F. App'x at 925. For the reasons stated above, Defendants' motion for summary judgment, ECF No. 40, is **GRANTED**. Defendants' motion to strike, ECF No. 65, is **DENIED**.

The Clerk is **DIRECTED** to enter judgment for Defendants consistent with the above and to close this case.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　s/ Michael H. Watson
　　　　　　　　　　　　　　MICHAEL H. WATSON, JUDGE
　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT

---

[6] In her Complaint, Plaintiff also brings a Negligent Supervision and Retention claim against the Warren BOE, and an Intentional Infliction of Emotional Distress claim against the Warren BOE. Compl. ¶¶ 86–95, ECF No. 1. However, Plaintiff concedes that discovery did not reveal facts to support these claims. Accordingly, these claims are also dismissed.