**UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| Andrea Place, | : |
| | : |
|    Plaintiff, | : |
| | : |
| | : Case No. 2:21-cv-00985 |
| v. | : |
| | : Judge Michael H. Watson |
| Warren Local School District Board | : |
| of Education, et al., | : Magistrate Judge Kimberly A. Jolson |
| | : |
|    Defendants. | : |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT[1]

Now come Defendants Warren Local School District Board of Education (the "District") and Amy (Way) Colgrove ("Coach Way") (collectively referred to as "Defendants"), by and through counsel, and hereby submit their Supplemental Brief addressing the impact of *McElhaney v. Williams*, Case No. 22-5903, 2023 WL 5492473, 2023 U.S. App. LEXIS 22466 (6th Cir. Aug. 25, 2023), pursuant to this Court's September 11, 2023 Order. (Doc. No. 73). This Court previously issued an Opinion and Order granting summary judgment in favor of Defendants on Plaintiff Andrea Place's federal claims, although it thereafter vacated that Opinion and Order as premature. (Doc. No. 70; 7/27/23 Notation Order). In short, the *McElhaney* decision has no bearing on the outcome of this case, and the Court should still grant summary judgment in favor of Defendants.

The First Amendment right in question in this case is Andrea's—the student. *McElhaney* does not address or change students' rights at all. Rather, *McElhaney*—a case brought by a parent of a student regarding his own rights—addresses only a parent's right to be free from retaliation

---

[1] Rather than repeat them here, Defendants incorporate by reference herein the facts and law outlined in detail in their Motion for Summary Judgment (Doc. No. 40), their Reply in Support of Motion for Summary Judgment (Doc. No. 66), their Motion to Strike (Doc. No. 65), and their Reply in Support of Motion to Strike (Doc. No. 68).

for criticizing school officials. The Sixth Circuit explained its decision not to limit a parent's First Amendment rights in the same way students' rights are limited via the *Tinker* analysis because, as the Sixth Circuit noted in *McElhaney*, a school does not act as a parent's temporary guardian. As such, there is no similar justification for limiting a parent's rights. But while *McElhaney* clarified a parent's First Amendment rights in a school setting, it did not change the rights of students, over whom the government acts as a temporary guardian in school settings. Importantly, the Sixth Circuit did not overrule its prior decisions addressing students' rights, including *Lowery*. Accordingly, *McElhaney* does not affect the First Amendment analysis of a student's claim, such as Andrea's claim in this case.

Even if *McElhaney* changed the First Amendment analysis here, it does not affect the qualified immunity analysis because it was decided years after the relevant events in this case. A case decided after allegedly violative conduct cannot serve to put school officials on notice that their conduct violates a person's rights. Further, *McElhaney* did not change the analysis of the third element of a First Amendment retaliation claim, which requires the plaintiff to establish that the defendant's actions were motivated by the plaintiff's speech. Andrea's First Amendment claim fails for the additional reason that she has not pointed to any evidence that she was cut from the basketball team because of her parents' complaints well over a year prior. Because *McElhaney* substantively addressed only qualified immunity for a parent's First Amendment claim, it does not change the analysis of any of Andrea's other claims, either.

**I.** ***McElhaney*** **is not controlling because it did not involve a student's First Amendment claim based on her parents' speech and her association with her parent.**

On its face, *McElhaney* appears to contain similar facts to this case. Both cases involve First Amendment claims of retaliation based on complaints about a student's playing time in high

2

school sports. But the critical distinction is that *McElhaney* addressed only a parent's First Amendment retaliation claim based on that parent's own speech, not a student's claim. Therefore, the decision has no effect on any of Andrea's claims.

In *McElhaney*, the plaintiff, Randall McElhaney, was the father of a high school softball player. *McElhaney*, 2023 U.S. App. LEXIS 22466, *3. Mr. McElhaney purchased season tickets to his daughter's softball games with seats right behind home plate. *Id.* At the beginning of the season, the school distributed an information sheet, which stated that "'[p]laying time is a non negotiable for coaches to talk directly with parents about.'" *Id.* Nonetheless, Mr. McElhaney sent text messages to his daughter's coach complaining about his daughter's playing time. *Id.* at *4-7. As a result, the school banned Mr. McElhaney from attending the softball games for a week. *Id.* at *7.

In response, Mr. McElhaney filed a civil rights action, asserting that his speech was protected and that school officials violated his First Amendment right. *Id.* at *8. The school officials moved for summary judgment on the basis of qualified immunity. *Id.* The district court granted their motion for summary judgment, holding that parental speech stands on the same footing as student speech for purposes of a First Amendment retaliation claim. *Id.* at *8, 13-14. On appeal, the Sixth Circuit reversed the district court's decision and remanded the case to the district court to determine whether a constitutional violation occurred. *Id.* at *17-18. It held that the *Lowery* and *Tinker* framework did not apply to a *parental* free speech claim since parents have a different relationship to school activities than do students. *Id.* at *14-15. The Sixth Circuit also held, however, that a school may impose reasonable, viewpoint neutral, time, place, and manner restrictions on parental interactions with the school.  *Id.* at *16.

3

*McElhaney* is not controlling here. Principally, the Sixth Circuit did not hold that the school officials violated Mr. McElhaney's rights. *Id.* at *17-18. The case was before the Sixth Circuit on an appeal based on the district court's grant of summary judgment based on qualified immunity. *Id.* at *2, 8-9. The Sixth Circuit explicitly reserved ruling on whether retaliation occurred and remanded the case to the district court to make a determination as to whether a constitutional violation had, in fact, occurred. *Id.* at *2, 17-18.

Second, Andrea's father is not a plaintiff in this case, and he is not making any claim about his constitutionally protected speech. (*See* Doc. No. 1, Compl.). The only plaintiff in this case is Andrea. (*See* Doc. No. 1, Compl.). There is also no claim of retaliation against Andrea's parents by the Defendants, nor is there any claim of an adverse action taken against Andrea's father because of his speech. (*See* Doc. No. 1, Compl.). The allegedly constitutionally protected speech and activity at issue in this case, according to Andrea herself, is her speech to her parents about the alleged harassment and retaliation. (Doc. No. 1, Compl. ¶¶ 47-50, 77-80). But as previously argued by Defendants, that speech by Andrea had to do with Coach Way's decisions about playing time and, to a lesser extent, Coach Way's communication. (Doc. No. 40, Defs.' Mot. Summ. J. 5-11). This speech is student speech, and the analysis in Defendants' dispositive motion briefing thus still applies. (Doc. No. 40, Defs.' Mot. Summ. J. 18-21; Doc. No. 66, Defs.' Reply in Support of Mot. Summ. J. 4-11). Even if the claim at issue is that Andrea was cut from the team because of her father's speech, not her own, then Andrea's claim is properly framed as a claim based on *her* First Amendment right to intimate association with her father—not her First Amendment right of free speech. *See Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984) (outlining the right to intimate association). *McElhaney* does not address the right to intimate association at all and

4

did not concern the student's rights. Rather, it addressed whether an adverse action may be taken against a parent for that parent's own speech. Therefore, it has no effect on Andrea's claim.

After *McElhaney*, it remains true that "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. v. Fraser,* 478 U.S. 675, 682, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986). The Sixth Circuit noted that the *Tinker* standard is necessary because

> the school is standing in the place of the students' parents, assuming their role to preserve the educational experience. Parents, however, have a different relationship to school activities than do students. After all, the school is not acting as a parent's temporary guardian when the parent attends his or her child's extracurricular activity or a parent-teacher conference.

*McElhaney*, 2023 U.S. App. LEXIS 22466, *14. In other words, the school must be able to take action against a student for typically protected First Amendment activity in order to preserve the educational experience. *Id.* The same is not true when it comes to parents because the school is not acting as the parent's guardian. *Id.* Whether the action taken is based on the student's speech or her association with others, the school may take action against the student to avoid a disruption. *See Lowery v. Euverard*, 497 F.3d 584, 588 (6th Cir. 2007) ("The First Amendment rights of students are also limited."). To hold otherwise would create a loophole allowing students to use others whom they are associated with as a mouthpiece to voice their opinions—causing the same disruption as if the student had made the comments herself. This would impermissibly force "school officials to surrender control of the American public school system to public school students" and would run afoul of *Tinker. Bethel Sch. Dist.*, 478 U.S. at 686.

The *Tinker* analysis is entirely premised on the fact that the alleged adverse action is being taken against the student. In *McElhaney*, the Sixth Circuit determined it was improper for the school to take an adverse action against a parent for his own speech. The appellate court did not

5

address the issue here: whether the school may take action against the *student* for the parent's speech and the student's association with her parent. Even after *McElhaney*, school officials may regulate conduct that materially and substantially interferes "with the requirements of appropriate discipline in the operation of the school." *Lowery*, 497 F.3d at 588 (quoting *Tinker,* 393 U.S. at 513). They just may not do so by taking an adverse action against the parent. But there were no allegations here of an adverse action taken against Andrea's parents, nor were there any such adverse actions taken against her parents. (*See* Doc. #1, Compl.). Accordingly, *McElhaney* is not controlling on the specific facts and issues in this case.

> **II.** ***McElhaney* does not affect the qualified immunity analysis because it was decided after the conduct complained of in this case.**

Even if *McElhaney* affected the analysis as to whether Andrea's First Amendment right was violated, it does not change the qualified immunity analysis because it was decided after the conduct in question here. Government officials may be held liable in damages only for conduct which (1) violated a plaintiff's statutory or constitutional rights and (2) was clearly established as a violation of law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Andrea bears the burden to show the Defendants are not entitled to qualified immunity. *Al-Lamadani v. Lang*, 624 F. App'x 405, 409 (6th Cir. 2015).

The focus of the analysis is whether the *conduct* complained of is clearly established, by binding precedent, as a violation of law—not whether the *right* that was allegedly violated was clearly established. *Ohio Civil Service Employees Assoc. v. Seiter*, 858 F.2d 1171, 1174 (6th Cir. 1988). The analysis is not as easy as determining whether Andrea had a First Amendment right to be free from retaliation based on her father's speech and her association with him. Rather, the "clearly established" analysis requires a step further. The proper analysis is whether it was clearly established that the specific conduct of Defendants was a violation of that right. *Id.* at 1177.

>The Supreme Court expanded on this concept in *Anderson v. Creighton*, stating:
>
>>For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*.

483 U.S. 635, 639 (1987).

Since *Anderson*, courts have continued to define clearly established law at too high a level of generality, and the Supreme Court has been forced to reiterate that the law must be clearly established by then-existing precedent. Just two years ago, the Supreme Court reiterated that the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8, 211 L.Ed.2d 164 (2021); *see also City of Tahlequah v. Bond,* 142 S. Ct. 9, 11, 211 L.Ed.2d 170 (2021) ("We have repeatedly told courts not to define clearly established law at too high a level of generality.").

Put simply, conduct is clearly established as a violation of law only if it was "'sufficiently clear that **every reasonable official** would have understood that what [the government official] is doing violates that [clearly established] right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (emphasis added). This demanding standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Notably, "to find a clearly established constitutional right, a district court must find *binding* precedent by the Supreme Court, its court of appeals or itself." *Ohio Civil Service Employees Assoc*, 858 F.2d at 1177 (emphasis added). This precedent must exist at the time of the allegedly violative conduct. *Id.* So here, the *McElhaney* decision has no effect on the qualified immunity

7

analysis. *See id.* The Sixth Circuit's decision was rendered on August 25, 2023, which was well after the conduct complained of. It could not possibly have guided the actions of Defendants.

Moreover, it cannot be said that the Defendants were "plainly incompetent." *Mullenix*, 577 U.S. at 12. The allegedly violative conduct must have been so clearly established as a violation of the law that "every reasonable official" would know it violated the plaintiff's rights. *Id.* But prior to the *McElhaney* decision, this Court itself issued a now vacated Opinion and Order holding that the Defendants' conduct was *not* a violation of Andrea's rights. (Doc. No. 70, Opinion and Order, PageID #1769-1777). If this Court could conclude that the Defendants did not violate Andrea's rights prior to the *McElhaney* decision, then non-lawyer school officials could not possibly have known that their conduct implicated the First Amendment. Defendants cannot be held to a higher standard than experienced judges and legal scholars. Whether the Defendants' conduct implicated the First Amendment was certainly not beyond debate. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (noting that qualified immunity applies unless the constitutionality of the government official's conduct was "beyond debate.").

Defendants maintain that their conduct was not a violation of Andrea's First Amendment right. Even if it were, it was not clearly established as a violation of that right because Andrea cannot point to any cases with similar facts holding that such conduct was impermissible. Even more generally, Andrea cannot point to any cases clearly establishing that adverse actions against a student based on her parents' speech is not subject to the *Tinker* analysis. Even *McElhaney* does not address this issue. Nor does the Sixth Circuit cite to any other case addressing this issue. Accordingly, even if the Defendants' conduct were violative of Andrea's First Amendment rights, which Defendants deny, Defendants would be entitled to qualified immunity. *McElhaney*— decided on different material facts well after the complained-of conduct—does not change this.

> **III. Even if *McElhaney* is applicable and Defendants are not entitled to qualified immunity, Andrea's First Amendment retaliation claim fails because there was no causal link between Andrea's parents' complaints and her being cut from the basketball team.**

Even if Andrea's speech was protected, Defendants' actions were not motivated by Andrea's complaints to her parents or her parents' complaints to the District, which is a required element of her First Amendment retaliation claim. *Kesterson v. Kent State Univ.*, 967 F.3d 519, 525 (6th Cir. 2020). To be clear, the only alleged retaliation at issue in this case is that Andrea did not make the team at the conclusion of tryouts on November 3, 2020. (Doc. No. 1, Compl. ¶ 49). Andrea claims she was cut in retaliation for her parents' complaints on January 31, 2019, and on June 17, 2019. (Doc. No. 1, Compl. ¶¶ 33, 47). But Andrea has presented no evidence that she did not make the team for the 2020 to 2021 basketball season because of her parents' complaints, which occurred seventeen and twenty-two months earlier. Her parents complained on January 31, 2019; June 17, 2019; and November 3, 2020 (after Andrea did not make the team). (Doc. No. 1, Compl. ¶¶ 4, 8, 22-23). The Defendants' awareness of the complaints does not create an inference of retaliation. *Henley v. Tullahoma City Sch. Sys.*, 84 Fed. Appx. 534, 541 (6th Cir. 2003). Specifically, nonconclusory evidence is required to link the allegedly protected activity to the adverse action. "[A] jury should not be asked to speculate on the issue of causation." *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1361 (6th Cir. 1992).

Absent any evidence of causation, Andrea can only rely on temporal proximity. But this theory of causation fails as well. The Sixth Circuit typically finds temporal proximity alone insufficient to establish causation. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). "[E]xtremely close temporal proximity" is required to permit an inference of causation. *Id.* at 401; *see Coleman v. Bowerman*, 474 Fed. Appx. 435, 437 (6th Cir. 2012) (noting that "when other evidence of retaliatory motive is lacking, [this court has] been reluctant to hold that temporal

proximity is sufficient to establish causation"). Indeed, the Sixth Circuit has determined that even a four month gap between protected activity and an adverse action, without more, is too long to support an inference of causation. *Henley*, 84 F. App'x at 541; *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) (noting that successful prima facie retaliation cases relying on temporal proximity have usually been based on time periods under six months); *Hunt v. City of Cleveland*, 563 Fed. Appx. 404, 409 (6th Cir. 2014) (finding no inference of retaliation based on temporal proximity where three months elapsed between the protected activity and the allegedly retaliatory act.); *Vaughn v. Robb*, No. 1:11-cv-323, 2012 U.S. Dist. LEXIS 31426, *11-12 (W.D.Mich. Feb. 17, 2012), adopted, 2012 U.S. Dist. LEXIS 31297 (W.D.Mich. Mar. 8, 2012) (collecting cases where time periods of less than three weeks up to about two months were insufficient to establish inference of retaliatory motive based on temporal proximity). Here, there was one year and five months to one year and ten months between Andrea's parents' complaints to the school district and the tryouts during which Andrea did not make the team. Nobody told Andrea that she was cut from the team because of her or her parents' complaints, and she has no evidence that she was cut because of her or her parents' complaints. (A. Place Dep. 258:20-259:5).

      Andrea did not make the team for several reasons, none of which had to do with her parents' complaints. (Doc. No. 40, Defs.' Mot. Summ. J. 14-17). The decision to cut Andrea was a joint decision between Coach Way and the other coaches, including Chad Smith, Brad Venham, and Heather Saliba. (Way Dep. 132:18-21; Saliba Aff. ¶¶ 5-6, attached to Defs.' Mot. Summ. J. as Exhibit D). During tryouts, the coaches discussed Andrea's skill level, where she ranked amongst the other players, and where they saw her fitting on the team's lineup. (Way Dep. 132:24-133:4, 135:18-136:3, 196:8-197:10; Saliba Aff. ¶¶ 7-8). This is a normal part of their process during

10

tryouts when they discuss fit and skill level. (Way Dep. 133:8-14; Saliba Aff. ¶¶ 6-7). At tryouts, Andrea was listed as the ninth player and sixth guard.[2] (Way Dep. 133:5-7). The coaches could not find a role for her on the team. (Way Dep. 143:22-144:3, 196:25-197:10). There were also concerns about Andrea's attitude and coachability, which is something the coaches had discussed with Andrea during her sophomore year on the team. (Way Dep. 133:16-135:13, 135:18-136:3; Saliba Aff. ¶ 9). All of the coaches agreed with the decision to cut Andrea, and none of the senior captains disagreed with the decision to cut Andrea. (Way Dep. 136:8-17, 138:23-139:12, 196:2-7; Saliba Aff. ¶ 11). Absent any evidence whatsoever that Andrea was cut because of her parents' complaints, the case cannot be sent to a jury to speculate on causation. *Turpin*, 959 F.2d at 136. Furthermore, as this Court previously found in its Opinion and Order, even assuming Andrea's parents' speech was constitutionally protected and even assuming a failure to investigate amounts to an adverse action, the retaliation claim against the District fails because Andrea cannot show she suffered any adverse action by the District. (Doc. No. 70, Opinion and Order, PageID #1778-1780). Accordingly, Andrea's First Amendment claim against both Defendants fails.

    **IV.**    *McElhaney* **does not affect Andrea's substantive due process claim, which fails because it cannot be based on the same conduct as the First Amendment claim and because none of the Defendants' behavior shocks the conscience, nor were Defendants deliberately indifferent.**

The plaintiff in *McElhaney* brought a substantive due process claim, but the district court and the Sixth Circuit quickly rejected it. *McElhaney*, 2023 U.S. App. LEXIS 22466, *18-19. The Sixth Circuit noted that the father's substantive due process claim was based on the denial of a contractual right to sit in his reserved game seats, so it was properly framed as a state contract claim over which the district court declined to exercise supplemental jurisdiction.[3] *Id.* Because the

---

[2] Only two guards play at a time.
[3] Mr. McElhaney did not appeal the district court's declination to exercise supplemental jurisdiction, so *McElhaney* has no effect on whether this Court chooses to exercise supplemental jurisdiction.

Sixth Circuit did not analyze Mr. McElhaney's substantive due process claim, *McElhaney* has no effect on the analysis here.[4]

To the extent that Andrea's substantive due process claim is based, in part, on alleged retaliation for her father's speech, her First Amendment claim "resolves this issue." *Heike v. Guevara*, 519 F. App'x 911, 913 (6th Cir. 2013). "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Heike*, 519 F. App'x at 913 (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Here, the First Amendment claim, as the explicit source of constitutional protection (if it were applicable), is the only basis for bringing a claim based on allegations of retaliation for protected speech or association. *Id.* Even if *McElhaney* somehow strengthened Andrea's First Amendment claim, this would only weaken her substantive due process claim based on the same conduct because the conduct would be covered by the First Amendment.

To the extent Andrea's substantive due process claim is based on actions other than alleged retaliation based on her father's speech, the claim fails because none of the Defendants' conduct was conscience shocking, nor were Defendants deliberately indifferent. As this Court previously noted, Andrea alleges bullying and harassment by Coach Way as the basis for her substantive due process claim based on the allegations that Coach Way (1) was difficult to communicate with and had negative energy; (2) did not adequately encourage her players; (3) talked down to her team and cursed; (4) told the players she is not their friend or mother; and (5) cut Andrea from the team. (Doc. No. 70, Opinion and Order, PageID #1781). But as this Court previously found, none of

---

[4] Rather than repeat the complete analysis, Defendants incorporate by reference herein their analysis on the substantive due process claim that was provided in their Motion for Summary Judgment and Reply in Support of Motion for Summary Judgment. (Doc. No. 40, Defs.' Mot. Summ. J. 21-24; Doc. No. 66, Defs.' Reply in Support of Mot. Summ. J. 11-13).

these actions, even if true, "shocks the conscience." *Id.*; *see also Embassy Realty Invs., Inc. v. City of Cleveland*, 572 Fed. Appx. 339, 343 (6th Cir. 2014). *McElhaney* does not change this outcome.

V. ***McElhaney* does not affect the District's supervisory liability because it did not take an adverse action against Andrea, and Andrea did not name individual board members as defendants.**

Like the substantive due process claim, *McElhaney* does not address a claim of supervisory liability. Because the Sixth Circuit did not analyze a claim of supervisory liability, *McElhaney* has no effect on the analysis here.[5]

Additionally, this Court previously found no supervisory liability against the District—not because of the analysis in *Tinker* and *Lowery*, but because "there is no genuine dispute of material fact that the [District] did, in fact, investigate all her parents' complaints about Coach Way." (Doc. No. 70, Opinion and Order, PageID #1778). Therefore, the District did not take an adverse action against Andrea. (*Id.* at PageID #1778-1780, 1782-1783). This analysis assumed both that the speech was protected and that a failure to act can amount to an adverse action. (*Id.* at PageID #1778). But as discussed above, there were no protected actions by Andrea or her father. Because *McElhaney* only addressed whether activity is protected under the First Amendment, this analysis is unchanged no matter the effect of *McElhaney*. Furthermore, a failure to act cannot amount to an adverse action. *Young v. Campbell Cty.*, 846 Fed. Appx. 314, 323 (6th Cir. 2021). Instead, a plaintiff must show that the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. *Id.* at 324. Additionally, Andrea did not name a supervisor in his or her individual capacity, which is required for supervisory liability. *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). The individual board members have no individual

---

[5] Rather than repeat the complete analysis, Defendants incorporate by reference herein their analysis on the supervisory liability claim that was provided in their Motion for Summary Judgment and Reply in Support of Motion for Summary Judgment. (Doc. No. 40, Defs.' Mot. Summ. J. 26-27; Doc. No. 66, Defs.' Reply in Support of Mot. Summ. J. 13-15).

responsibilities beyond the board as a whole. *Doe v. Claiborne County*, 103 F.3d 495, 511-12 (6th Cir. 1996). The District itself can only be held liable under 42 U.S.C. 1983 where "its official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Teare v. Independence Local Sch. Dist. Bd. of Educ.*, No. 1:10-cv-01711, 2011 U.S. Dist. LEXIS 113239, *18 (N.D.Ohio Aug. 18, 2011) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 752-53 (6th Cir. 2006)). Thus, even if *McElhaney* affected the analysis of whether Andrea or her father engaged in protected activity, which it does not, Andrea's claim would still fail for the other reasons this Court noted in its Opinion and Order and Defendants argued in their dispositive motion briefing.

**VI.** ***McElhaney*** **does not affect Andrea's *Monell* claim, which fails because there is no underlying constitutional violation, and Andrea fails to point to a failure to train or indifference to a pattern of illegal activity by the District.**

Again, *McElhaney* did not address a *Monell* claim, so it does not affect the analysis in this case.[6] For the District to be liable under a *Monell* theory, there must be an underlying constitutional violation. *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021). Because there was no underlying violation, Andrea's *Monell* claim against the District fails. (*See* Doc. No. 70, Opinion and Order, PageID # 1778). Even if there were an underlying constitutional violation, Andrea's claim would still fail because she has failed to identify any inadequacies of the District in training Coach Way. (Doc. No. 40, Defs.' Mot. Summ. J. 28-29). Further, she has not identified a pattern of illegal activity to which the District was indifferent. (*See* Doc. No. 58, Plf.'s Response in Opp'n 29-31; Doc. No. 66, Defs.' Reply in Support of Mot. Summ. J. 15-16). In fact, she did not identify any illegal activity, and the District responded to all her complaints, nonetheless. In response to the Defendants' Motion for Summary Judgment,

---

[6] Rather than repeat the complete analysis, Defendants incorporate by reference herein their analysis on the *Monell* claim that was provided in their Motion for Summary Judgment and Reply in Support of Motion for Summary Judgment. (Doc. No. 40, Defs.' Mot. Summ. J. 27-29; Doc. No. 66, Defs.' Reply in Support of Mot. Summ. J. 15-16).

Andrea seemingly abandoned her claim that the Board allegedly failed to train its officials, coaches, and administrators in proper methods of recognizing, responding to, and preventing harassment and retaliation and in permitting ongoing harassment, because there is no mention of this claim in her Response. (Doc. No. 1, Compl. ¶ 72; Doc. No. 58, Plf.'s Response in Opp'n 29-31). Her failure to address this argument in her Response constitutes waiver or abandonment of the claim. *Longino v. City of Cincinnati*, 2013 U.S. Dist. LEXIS 78249, *16 (S.D.Ohio June 4, 2013). In sum, the *Monell* claim fails because there was no underlying constitutional violation. As discussed above, *McElhaney* does not change this. Nonetheless, Andrea abandoned this claim by failing to address it in response to Defendants' Motion for Summary Judgment.

**VII.** ***McElhaney* does not affect the state law claims or the claims for punitive damages and attorney's fees because the case only addressed federal constitutional claims.**

Andrea's state law claims and her claims for punitive damages and attorney's fees are unaffected by *McElhaney*. In *McElhaney*, the district court refused to exercise supplemental jurisdiction over Mr. McElhaney's state law claims, but Mr. McElhaney did not appeal this decision, so the Sixth Circuit did not address it. *McElhaney*, 2023 U.S. App. LEXIS 22466, *18-19. Thus, this Court's decision not to exercise supplemental jurisdiction over Andrea's state law claims is unaffected by *McElhaney*.

In the event that this Court decides to exercise supplemental jurisdiction over Andrea's state law claims, they and the claims for punitive damages and attorney's fees fail for the reasons set forth in Defendants' Motion for Summary Judgment (Doc. No. 40, PageID #728-734) and Reply in Support of Motion for Summary Judgment. (Doc. No. 66, PageID #1731-1739). *McElhaney* does not address any Ohio state law claims, so that analysis is unchanged.

**VIII. Andrea abandoned her claims for intentional infliction of emotional distress and negligent retention and supervision against the District and for violation of the Equal Protection Clause against all Defendants.**

Finally, in her Response to Defendants' Motion for Summary Judgment, Andrea conceded her claims for intentional infliction of emotional distress and negligent retention and supervision against the District fail. (Doc. No. 58, Plf.'s Response in Opp'n 33). She also conceded that her equal protection claim against all Defendants fails. (*Id.* at 28). These concessions constitute abandonment of the claims. *Longino*, 2013 U.S. Dist. LEXIS 78249, *16. Additionally, *McElhaney* does not address these claims, so it has no effect on them, and they still fail.

### IX. Conclusion

*McElhaney* does not change the analysis in this case. As fully outlined in Defendants' Motion for Summary Judgment (Doc. No. 40) and Reply in Support of Motion for Summary Judgment (Doc. No. 66), all of Andrea's claims against Defendants should be dismissed.

Respectfully submitted,

/s/ Michael Valentine
Michael J. Valentine, Esq. (0038806)
Keona R. Padgett, Esq. (0090628)
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311; FAX (614) 232-2410
mvalentine@reminger.com
kpadgett@reminger.com
*Counsel for Defendants Warren Local School District Board of Education and Amy (Way) Colgrove, individually and as Head Coach of Girls' Basketball at Warren Local High School*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed on September 29, 2023, using the Court's CM/ECF system and that service will be made upon the following via the Court's CM/ECF system:

Mark A. Weiker, Esq. (0086413)
AW Law, LLP
262 South Third Street
Columbus, Ohio 43215
(614) 745-2001; FAX: (614) 417-5081
mark@awlawohio.com
*Counsel for Plaintiff*

                                                /s/ Michael Valentine
                                                Michael J. Valentine, Esq. (0038806)
                                                Keona R. Padgett, Esq. (0090628)