**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Andrea Place,

     Plaintiff,                Case No. 2:21-cv-985

     v.                     Judge Michael H. Watson

Warren Local School District      Magistrate Judge Jolson
Board of Education, *et al.*,

     Defendants.

## OPINION AND ORDER

Warren Local School District Board of Education (the "School District") and

Amy (Way) Colgrove ("Way" collectively, "Defendants") move for summary

judgment on Andrea Place's ("Plaintiff") claims. ECF No. 40. Defendants also

move to strike evidence Plaintiff relies on in her opposition to summary judgment.

ECF No. 65. For the following reasons, the motion for summary judgment is

**GRANTED IN PART** and **DENIED IN PART**; the motion to strike is **DENIED**.

### I.    FACTS

Additional facts will be provided in the analysis section, but an overview of

the facts is as follows:

During the relevant times, Plaintiff was a student at Warren High School

(the "School"). Pl.'s Dep. 20:2–9, ECF No. 39-1. In Plaintiff's sophomore year,

she played on the School's varsity basketball team (the "Team"). *Id.* at 87:10–

12. At the end of that season, Plaintiff was injured and could not play basketball

for about a year. *Id.* at 200:15–201:16. In October of Plaintiff's senior year, she accepted a scholarship to play basketball at a NAIA Division II university. *Id.* at 232:23–233:4; 283:18–284:2; 285:22–24. A few weeks later, she again tried out for the Team for her senior-year season. *Id.* at 246:12–248:14. Plaintiff was not offered a spot on either the Team or the junior varsity team. *Id.* at 254:3–256:11.

During Plaintiff's time at the School, Plaintiff's parents, Eddie and Bree Place (respectively, "Mr. Place" and "Mrs. Place"), complained to Way and other school officials. Three complaints are relevant here: (1) a complaint during Plaintiff's sophomore year about Plaintiff's playing time and Way's other alleged mistreatment of Plaintiff and others ("Complaint #1"); (2) a complaint the June after Plaintiff's sophomore year about a "wall of shame" display ("Complaint #2" collectively with Complaint #1, "the Complaints"); and (3) a late 2020 or early 2021 complaint after Plaintiff was not selected for the Team her senior year ("Complaint #3"). *E.g.*, Eddie Place Dep. 118:8–121:6, 137:1–142:24, 185:23–187:15, 288:10–294:24; Email, ECF No. 48, PAGEID # 928.

Based on these events, Plaintiff filed suit, contending that Way (and, by extension, the School District) retaliated against her for her parents' complaints and otherwise mistreated her. *See generally*, Compl., ECF No. 1.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a): "The court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and "on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986).  The Court disregards "all evidence favorable to the moving party that the jury would not be required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citation omitted).  Summary judgment will "not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248 (internal citations and quotation marks omitted).

The Court is not "obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  The Court may rely on the parties to call attention to the specific portions of the record that

demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## III.    ANALYSIS

Plaintiff asserts the following claims: (1) retaliation for protected speech, in violation of the United States and Ohio Constitutions; (2) violations of Plaintiff's substantive due process and equal protection rights under the United States Constitution; (3) negligent supervision and retention under Ohio law; (4) a violation of Ohio Revised Code § 2477.03; and (5) intentional infliction of emotional distress ("IIED") under Ohio law. Compl. ¶¶ 46–95, ECF No. 1. Defendants move for summary judgment on all claims. Mot., ECF No. 40. Before addressing the merits of Plaintiff's claims, the Court turns to Defendants' motion to strike.

## A.    Motion to Strike

Defendants move to strike some of the evidence Plaintiff relies on in her opposition to summary judgment and some of Plaintiff's "misstatements of fact." Mot., ECF No. 65.

On the whole, this motion seems little more than Defendants' attempt to get another opportunity to rebut Plaintiff's version of the facts. Defendants have had a full opportunity to present their view of the facts in their motion for summary judgment and reply in support of the same. Defendants do not get a third opportunity to do so through a motion to strike. Thus, the Court disregards the portions of Defendants' motion that merely reframe the facts.

As to the rest of the motion, Defendants argue that (1) some of Plaintiff's evidence is improper "character evidence" in violation of Federal Rule of Evidence 404; (2) some of Plaintiff's evidence is inadmissible hearsay; and (3) some of Plaintiff's response brief mischaracterizes the evidence.

The Court first addresses the "character evidence." Plaintiff submits evidence that another student (or the student's parent) was afraid Way would retaliate if they complained, but later complained about Way to the School District. *E.g.*, Letter, ECF No. 52. Defendants argue that this evidence is impermissible "character evidence" against Way. To the extent that this evidence is offered to show that Way retaliated against *Plaintiff*, the Court will not consider it. But if the evidence is offered to show, for purposes of *Monell* liability, whether the School Board failed to investigate a prior, similar allegation, the Court will consider it.

As to the alleged hearsay, because those statements could be presented in an admissible form at trial (*e.g.*, by calling the declarants to testify), the Court may consider them on summary judgment. *See Bard v. Brown Cnty., Ohio*, 970 F.3d 738, 758, n.12 (6th Cir. 2020) (instructing that although certain "out-of-court statements may constitute inadmissible hearsay," "it is well-established that the party opposing summary judgment need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment" (quotation marks and citation omitted)).

Finally, to the extent that Defendants argue that Plaintiff's response should be stricken because it is not supported by the evidence (or misconstrues the same), that argument falls flat. As in every ruling on summary judgment, the Court will conduct its own review of the cited-to evidence and will disregard any argument that lacks evidentiary support.

In sum, the motion to strike is **DENIED**.

## B. First Amendment Retaliation

Plaintiff contends that Defendants violated her First Amendment rights when she was cut from the Team in retaliation for her parents' complaints.

To succeed on a First Amendment retaliation claim, a plaintiff must first make out a prima facie case. *Ashford v. Univ. of Michigan*, 89 F.4th 960, 974 (6th Cir. 2024). Once a plaintiff does so, the burden shifts to the defendant to prove, by a preponderance of the evidence, that it would have taken the adverse action even in the absence of the protected activity. *Id.*

As an initial observation, a plaintiff can pursue a First Amendment retaliation claim when the plaintiff suffers retaliation because of a close relative's protected speech. *See, e.g.*, *Fakhoury v. O'Reilly*, 837 F. App'x 333, 340 (6th Cir. 2020) (explaining, in the context of a qualified immunity analysis, that "a plaintiff may bring a First Amendment retaliation claim through a relative's protected speech" (citation omitted)).

The Court first considers the claim against Way before considering whether the School Board may be liable under *Monell*.

### 1. Way

#### a. Prima Facie Case

To make out a prima facie case of First Amendment Retaliation, a plaintiff must show: (1) "[s]he engaged in constitutionally protected speech"; (2) the state actor took an adverse action against her "that caused h[er] to suffer an injury that would likely chill a person of ordinary firmness from continuing that activity"; and (3) the state actor's conduct was "motivated, at least in part, by the exercise of [the plaintiff's] constitutional rights." *McElhaney v. Williams*, 81 F.4th 550, 556 (6th Cir. 2023) (citation omitted).

##### i. Protected Speech

The First Amendment's protection of the freedom of expression is expansive. "[O]ther than in a few limited areas, almost all speech is protected from governmental interference." *Id.* at 557 (cleaned up). Relevant here, the "[f]reedom to criticize public officials is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Thacker v. Campbell*, 165 F.3d 28 (Table), 1998 WL 537599, at *2 (6th Cir. 1998).

In the public-school context, *student* speech has more limited First-Amendment protection. *See, e.g.*, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969). If student speech "materially disrupts classwork or involves substantial disorder or invasion of the rights of others," the school may restrict that speech. *Id.* at 513 (citations omitted).

"Parents, however, have a different relationship to school activities than do students." *McElhaney*, 81 F.4th at 558.  Thus, the "disruption" standard does not apply to *parent* speech about school officials.  *Id*.  Instead, such parental speech is evaluated under the traditional First Amendment standards.  *Id*. at 558–59.

Applied here, the "protected speech" element is satisfied.  Mr. and Mrs. Place (who are parents, not students) complained to and about Way, a state actor, when they made the Complaints.[1]  Said another way, Mr. and Mrs. Place's Complaints criticized a public official, which is conduct "at the core of First Amendment values." *Thacker*, 1998 WL 537599, at *2.  Accordingly, there is no genuine dispute of material fact that the Places engaged in constitutionally protected speech by making the Complaints.

### ii.    Adverse Action

The parties do not dispute that Plaintiff suffered an adverse action.  The Sixth Circuit has previously concluded that the denial of the opportunity to play high school basketball had "the tendency to chill [protected] speech" and was thus an adverse action. *Henley v. Tullahoma City Sch. Sys.*, 84 F. App'x 534, 540 (6th Cir. 2003).  Applying that conclusion here, Plaintiff was denied the opportunity to play on either the Team or the junior varsity team her senior year.

---

[1] The Court observes that Plaintiff's allegations about her protected speech is less than clear and could be read as alleging that only Plaintiff (and not her parents) engaged in protected conduct. *E.g.*, Compl. ¶ 47, ECF No. 1.  However, when the Complaint is read as a whole, Plaintiff alleges she was retaliated against for her parents' complaints. *See generally*, *id*.

Pl.'s Dep. 254:3–256:11, ECF No. 39-1. Thus, there is no genuine issue of material fact that Plaintiff suffered an adverse action.

### iii. Causation

Plaintiff must show that "the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 586 (6th Cir. 2008) (citation omitted).

There is a genuine dispute of material fact about causation. To begin, the Court clarifies that Complaint #3 could not have caused any adverse action because it came *after* the alleged adverse action. The Complaints, by contrast, pre-date the alleged adverse action, and Plaintiff points to evidence that Way cut Plaintiff from the Team because of the Complaints. For example, a short memo about the decision to cut Plaintiff from the team specifically discusses Mr. Place's Complaints (although it does not clarify *which* complaints it discusses). Memo, ECF No. 39-4 at PAGEID # 561–63. The memo indicates that Mr. Place's complaints were "part of the conversation" around why Plaintiff was cut. *Id.* From that memo, a jury could reasonably infer that the Complaints were a motivating factor for cutting Plaintiff.[2]

---

[2] Additionally, in response to Complaint #1, the athletic director told Mr. Place that, if he continued to complain about bullying, he would "find himself in trouble someday." Audio Recording at 21:35–22:10, ECF No. 37. A reasonable jury could interpret that statement as threatening Mr. Place with some kind of adverse action unless he stopped engaging in protected speech. Of course, at trial, Plaintiff would have to present evidence showing that Way shared this sentiment and ultimately acted in part because of the Complaints.

In addition, Plaintiff points to several pieces of evidence that undercut Defendants' explanation that Plaintiff was cut because of her ability level or because she would be "unhappy" with her playing time.

First, as to the contention that Plaintiff was cut because of her ability level, Way admitted she selected at least one student with a lower ability level than Plaintiff to be on the varsity team. Way Dep. 175:11–15, ECF No. 39-3. And Plaintiff had received an offer to play college basketball—with a scholarship. *Id.* at 232:23–233:4; 283:18–284:2; 285:22–24. A reasonable jury could infer that Plaintiff's scholarship belies Defendants' contention that Plaintiff was at a meaningfully lower ability level than the other students.

Next, Plaintiff cites to evidence that discredits Way's explanation that she cut Plaintiff because Plaintiff would be "unhappy" with playing time. First, Way testified that *Plaintiff* never communicated her "unhappiness" with playing time to Way, only Mr. Place did. Way Dep. 144:4–145:6, ECF No. 431. In addition, the year before, Plaintiff had asked to be on the Team while injured—and, therefore, knowing she would have almost no playing time—so that she could enjoy the camaraderie of the Team. Pl.'s Dep. at 215:24–216:24, ECF No. 39-1. Based on these facts, a reasonable jury could infer that playing time was immaterial to Plaintiff and that Way knew the same. If a jury made that inference, it might disbelieve Way's testimony that she cut Plaintiff from the team because of Plaintiff's opinions on playing time.

In sum, there is a genuine dispute of material fact as to whether Mr. and Mrs. Place's protected speech was a motivating factor for cutting Plaintiff from the Team.

### b.    Way's Burden

"Once the prima facie case is made out, the burden shifts to the defendants to show, by a preponderance of the evidence, that" they would have taken the adverse action even in the absence of the protected activity. *Ashford*, 89 F.4th at 974 (citation omitted).

Defendants argue in passing that Way would have taken the adverse action (cutting Plaintiff from the Team) even if her parents had not complained. *E.g.*, Mot. 21, ECF No. 40. For the same reasons there is a genuine dispute of material fact as to causation, there is also a genuine issue of material fact as to whether Plaintiff would have been cut from the Team without her parents' Complaints. Accordingly, this issue must go to the jury.

### c.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity for the claims against them in their individual capacities. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When reviewing a claim of qualified immunity, courts must consider a two-prong test. *See Plumhoff v. Rickard*, 572 U.S. 765, 773–74 (2014). A negative answer to either prong means that the government official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For the first prong, courts consider whether the plaintiff's constitutional rights were violated. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223.

The other prong is "whether the right was clearly established . . . in light of the specific context of the case." *Id.* For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

If a defendant raises qualified immunity as an affirmative defense, the plaintiff has the burden "of demonstrating that the defendant is not entitled to qualified immunity." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006)). This means the plaintiff must show both that "a constitutional right was violated and that the right was clearly established at the time of the violation." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (citation omitted).

The Court first considers the "constitutional violation" prong. For the reasons discussed above, there is a genuine dispute of material fact about

whether Way violated Plaintiff's constitutional rights. Therefore, at least at the summary judgment stage, Plaintiff has satisfied the first qualified immunity prong.

Next, the Court turns to the "clearly established right" prong. In *McElhaney*, the Sixth Circuit held that the law is clearly established that "a school official may not retaliate against the parent for the content of his speech." *McElhaney*, 81 F. 4th at 559. Similarly, it is clearly established that "a plaintiff may bring a First Amendment retaliation claim through a relative's protected speech[.]" *Fakhoury*, 837 F. App'x at 340 (6th Cir. 2020) (citation omitted). Both *McElhaney* and *Fakhoury* explain that these two rights were clearly established well before the events underlying this case. *McElhaney*, 81 F. 4th at 557–59 (relying heavily on a 2008 case); *Fakhoury*, 837 F. App'x at 340–41 (explaining that a 2003 case "recognized the right of children to bring claims based on their parents' protected speech" (citation omitted)). Combining *McElhaney* and *Fakhoury*, it was clearly established that a school official may not retaliate against a child for her parent's protected speech.

At bottom, Way is not entitled to qualified immunity.

### 2. The School Board

Plaintiff also seeks to impose liability against the School Board for the alleged First Amendment violation.

As an initial matter, if Plaintiff seeks to impose § 1983 liability on a theory of *respondeat superior*, such a theory cannot succeed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens

and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

The Court next turns to whether the School Board is liable under § 1983, as explained in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and subsequent Supreme Court case law. Under that case law, "[a] municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 691). Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* at 60–61 (quoting *Monell*, 436 U.S. at 691).

The Sixth Circuit recently explained the methods through which a plaintiff can pursue municipal liability:

> There are four methods of proving a municipality's illegal policy or custom: the plaintiff may prove (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Wright v. City of Euclid, Ohio*, 962 F.3d 852, 880 (6th Cir. 2020) (internal quotation marks and citations omitted). Under any of these theories, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v.*

*Brown*, 520 U.S. 397, 404 (1997). In other words, "to hold a municipality liable under § 1983, a plaintiff must prove that the municipality's policy or custom caused the alleged injury." *Ouza v. City of Dearborn Heights, Mich.*, 969 F.3d 265, 286 (6th Cir. 2020) (internal quotation marks and citations omitted).

Plaintiff's claim against the School Board is best construed as asserting *Monell* liability under the official policy and custom-of-tolerance theories. The Court addresses each theory, in turn.

### a. Official Policy

Plaintiff alleges that the School Board has an official policy of punishing students for their parents' speech. To succeed on an "official policy" theory, "a plaintiff must identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Wright*, 962 F.3d at 880 (quotation marks and citation omitted).

Plaintiff submits evidence that the School District has a policy that if a parent makes a social media post that is "negative," the student will be suspended for one game unless the parent removes the post (the "Policy"). Harold 30(b)(6) Dep. 7:16–10:4, ECF No. 50. The Athletic Director testified that he has enforced the Policy in the past but that no student was suspended because the parents removed the offending posts. *Id.* at 10:5–17.

Although Plaintiff frames this as an "official policy" theory, it may be more appropriately considered a "custom of tolerance" theory. That is, a jury could find that the Policy shows that the School District had a custom of approving

retaliation for protected speech, and that such a custom was the moving force behind Plaintiff's injury.  If a jury reached that conclusion, it could further conclude that the Policy was the moving force behind Plaintiff's injury.  Accordingly, whether called an official policy or a custom, summary judgment on the Monell claim is unwarranted.

### b.   Custom of Tolerance

"A plaintiff can establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct[,]" which lead to the continued unconstitutional conduct against the plaintiff.  *Wright*, 962 F.3d at 882 (6th Cir. 2020) (citation omitted).  A "claim based on inadequate investigation requires not only an inadequate investigation in this instance, but also a clear and persistent pattern of violations in earlier instances," *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 495 (6th Cir. 2020) (cleaned up), because it is the earlier instances that create the custom.  Further, there must be a causal link between the custom of tolerance and the plaintiff's injuries.  *Id.* An "entity's failure to investigate the plaintiff's specific claim will, by definition, come *after* the employee's action that caused the injury about which the plaintiff complains." *Id.* (emphasis in original).  Thus, because a single failure to investigate a plaintiff's specific claim will necessarily follow the plaintiff's injuries, "there can be no causation." *Id.* (internal quotation marks and citations omitted).

Here, if Plaintiff bases her custom-of-tolerance theory on an alleged failure to investigate Way cutting her from the team, that theory is unavailing. Because any investigation into why Plaintiff was cut from the Team occurred after she was cut, that investigation cannot have been the "moving force" behind that decision.

Moreover, Plaintiff does not point to any evidence that the district failed to investigate prior allegations of retaliation for protected speech, or any types of constitutional violations. Because Plaintiff does not show that the School District had a pattern of *never* investigating allegations of unconstitutional retaliation, Defendants are entitled to summary judgment on Plaintiff's custom-of-tolerance theory for *Monell* liability. *See Kirk v. Calhoun Cnty., Mich.*, No. 19-2456, 2021 WL 2929736, at *8 (6th Cir. July 12, 2021) ("[I]f there was no custom of tolerating inadequate investigations into illegal conduct, the wrongdoer could not have been motivated by a municipal policy in committing the constitutional violation.").

## C.    Substantive Due Process

To succeed on a claim for a substantive due process violation, a plaintiff must show that the state action "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Marderosian v. City of Beavercreek*, 423 F. App'x 524, 527 (6th Cir. 2011) (quotation marks and citation omitted)).

To the extent that Plaintiff bases her substantive due process claim on her right to free speech, that claim fails because a more specific constitutional provision—the First Amendment—applies to such a claim. *Brandenburg v. Hous.*

*Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("[A] cause of action cannot be based in substantive due process where a more specific constitutional provision is applicable." (citation omitted)).

One of Plaintiff's substantive due process claim theories is based on Way's alleged "bullying" of Plaintiff and her teammates, including a "Wall of Shame" display at a team event.

This theory falls flat. Way's "bullying" does not rise to the level of constitutionally conscience-shocking behavior necessary to support a substantive due process claim. *See Wells v. Farmington Pub. Sch.*, No. 21-CV-11265, 2022 WL 17361286, at *11 (E.D. Mich. Dec. 1, 2022) (explaining that "purely psychological bullying . . . does not rise to a level that shocks the conscience." (quotation marks and citation omitted)). Accordingly, a substantive due process claim based on the alleged bullying lacks merit.

Insofar as Plaintiff asserts a substantive due process claim under the "state created danger" or "custodial exception" theories, those claims also fail. Under the "state created danger" theory, "state actors may be liable if their "affirmative acts . . . either create or increase the risk that an individual will be exposed to private acts of violence." *See Engler v. Arnolds*, 862 F.3d 571, 575 (6th Cir. 2017) (quotation marks and citation omitted). Here, Plaintiff does not identify what "private acts of violence" Defendants' affirmative conduct exposed her to. Thus, she cannot prevail on a "state created danger" theory.

As to the "custodial exception," that rule allows a plaintiff to recover for "injuries that the plaintiff suffers while in the state's custody or when the state releases the plaintiff from custody in a manner that increases her risk compared to the status quo." *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *6 (6th Cir. Aug. 18, 2022) (cleaned up).  Here, Plaintiff was not "in the state's custody."  Although Ohio has compulsory education laws, those laws do not make students "in custody" for purposes of the "custodial exception."  *See Baker v. Clay Cnty. Bd. of Educ.*, 871 F. Supp. 930, 933 (E.D. Ky. 1994), *aff'd sub nom. Baker v. Bd. of Educ. of Clay Cnty., Ky.*, 78 F.3d 584 (Table) (6th Cir. 1996) (explaining that "compulsory school attendance laws do not create [the] special relationship between the students and the public school authority" necessary to support a custodial exception claim (citing cases)).  Thus, any claim based on the "custodial exception" fails.

The Court therefore grants Defendants summary judgment on the substantive due process claim.

## D.    Equal Protection and Negligent Supervision and Retention

Plaintiff concedes that the "facts revealed in discovery" do not support either her Equal Protection or her negligent supervision and retention claims. Resp. 28, 33, ECF No. 58.  Accordingly, Defendants are entitled to summary judgment on these claims.

E. **Ohio Revised Code § 2744.03 and Ohio Constitutional Claim**

Plaintiff brings a "claim" under Ohio Revised Code § 2744.03. Compl.

¶¶ 83–85, ECF No. 1. Section 2744.03 does not include a private right of action.

Rather, it provides for political subdivisions' (and their employees') statutory

immunities. Thus, to the extent Plaintiff pursues a claim under § 2744.03, that

claim fails.

Similarly, Plaintiff asserts a claim under Article I, Section 11 of the Ohio

Constitution. However, "the right to freedom of speech conferred under Article 1,

Section 11 of the Ohio Constitution is not self-executing and does not create a

private cause of action." *PDU, Inc. v. City of Cleveland*, No. 81944, 2003 WL

21555157, at *3 (Ohio Ct. App. July 10, 2003) (citations omitted). As a result,

Plaintiff's Ohio Constitutional claim lacks merit.

F. **Intentional Infliction of Emotional Distress**

To succeed a claim for IIED, a plaintiff must show:

(1) the defendant either intended to cause emotional distress or knew
or should have known that the actions taken would result in serious
emotional distress; (2) the defendant's conduct was "extreme and
outrageous"; (3) defendant's actions proximately caused psychic
injury; and (4) the mental anguish suffered by the plaintiff was serious,
and no reasonable person could be expected to endure it.

*Rossi v. Alcoa, Inc.*, 129 F. App'x 154, 159 (6th Cir. 2005) (citing Ohio law).

Under Ohio law, the conduct must be so extreme and outrageous that it goes

"beyond all possible bounds of decency, and [is] regarded as atrocious and

utterly intolerable in a civilized community." *Id.* (citation omitted).

Defendants are entitled to summary judgment on the IIED claim.  There is no genuine dispute of material fact that Way's behavior was not "extreme and outrageous."  Again, Way may have acted poorly.  But a school sports coach cutting a student from a sports team, being hard on team participants, and even having a "Wall of Shame" display is, at worst, examples of Way treating Plaintiff "harshly, rudely, and unfairly," which cannot support an IIED claim.  *Id.* (citation omitted).  There is thus no genuine dispute of material fact that Plaintiff cannot establish the "extreme and outrageous" element.  *See Allen v. Pirozzoli*, No. 103632, 2016 WL 1600344, at *2–3 (holding that "bullying" and "ongoing harassment," including that the defendant allegedly stalked the plaintiff and acted in a threatening way near the plaintiff's home, was not "extreme or outrageous" enough to support an IIED claim).[3]

In sum, Defendants are entitled to summary judgment on the IIED claim.

## G.    Punitive Damages and Attorney's Fees

Defendants move for summary judgment on whether Plaintiff may pursue punitive damages and attorney's fees.  Mot. 34–35, ECF No. 40.  This argument fails.

First, Defendants' arguments against punitive damages and attorney's fees largely depend on an assumption that all of Plaintiff's claims fail.  Because Plaintiff's First Amendment claim survives, these arguments are unavailing.

---

[3] To whatever extent premises her IIED claim on Ways alleged retaliation for the Complaints, that claim is duplicative of Plaintiff's First Amendment claim.

Second, both punitive damages and attorney's fees are available to a prevailing plaintiff on a First Amendment retaliation claim. *See* 42 U.S.C. § 1988; *King v. Zamiara*, 788 F.3d 207, 216–17 (6th Cir. 2015) ("[A] defendant who has been found liable for First Amendment retaliation has engaged in conduct that warrants consideration of an award of punitive damages."). Accordingly, as to punitive damages and attorney's fees, Defendants' motion is **DENIED**.

## IV.   CONCLUSION

For these reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**; the motion to strike is **DENIED**. The only remaining issues for trial are whether Mr. and Mrs. Place's protected speech was a motivating factor for the adverse action, whether Way would have taken the adverse action in the absence of the protected speech, and whether the Policy was the moving force behind Plaintiff's injury. The parties are **ORDERED** to file a joint notice **WITHIN TWENTY-ONE DAYS** indicating whether they wish to engage in mediation with a member of the Court's staff.

The Clerk shall terminate ECF No. 40.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**